# In The United States Court of Federal Claims

No. 02-24L

(Filed: December 20, 2012)

_____

THE PUEBLO OF LAGUNA,

                Plaintiff,

v.

THE UNITED STATES,

                Defendant.

_____

**ORDER**

_____

On November 30 and December 3, 2012, the parties filed respectively a proposed order on clawback issues and e-discovery in this matter.

Pursuant to RCFC 1, 16, and 26, as well as Fed. R. Evid. 502(d), and in order to facilitate discovery and avoid delays, the court hereby **ORDERS** as follows:

1. This order supplements and amends this court's discovery rules, the Record Retention Order ("RRO") entered in this case on March 19, 2004, as amended by this court's Order of April 18, 2005, the Confidentiality Agreement and Protective Order ("CAPO") entered in this case on April 19, 2004, and the Alternative Dispute Resolution CAPO ("ADR CAPO") entered in this case on June 2, 2005.

2. Generally, the costs of discovery shall be borne by each party, subject to the provisions of RCFC 26(b)(2)(B) and (C), and 37.

**PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")**

3. Unless otherwise provided in a written agreement of the parties, this order, or a further order of this court, all documents that are produced by the parties in this action shall be produced in electronic image form in the manner provided in paragraphs 4 to 8 of this Order.

4. Each document shall be produced in a single-page tagged image file format ("TIFF"), named with a unique production number followed by the appropriate file extension. For ESI, the produced TIFF shall reflect how the source document would have appeared if printed on a printer using the print settings that match how the document was last saved by the document's custodian. If a document includes more than one page, the unitization of the document and any attachments shall be maintained as they existed in the source document. The parties shall produce a Concordance-compatible "load file" and an image cross-reference file (e.g., .opt or .log) to link to the images, which files shall facilitate the use of the produced images by a document management or litigation support database system and shall identify document breaks for each document. To the extent it is feasible, the producing party shall render the text appearing on the images searchable. If the producing party identifies specific documents or categories of documents that are not feasibly able to be made searchable by optical character recognition ("OCR"), the parties will meet and confer regarding their production. If the parties disagree whether it is feasible to make certain document images searchable, either party may seek relief from the court. The producing party shall not delay production of the images, without being made searchable, while such a dispute is pending. Each electronic image shall convey the same image as the original page. Documents that present imaging or formatting problems shall be promptly identified by the receiving party; the parties shall meet and confer to attempt to resolve the problems. In addition, either party may request that certain documents be produced only in their native or similar formats if the party believes that a TIFF production would be burdensome and of limited utility. The parties will meet and confer to consider any such requests.

5. If an original document, including but not limited to photographs, slides, and similar media, contains color, upon request of either party, the parties shall meet and confer regarding whether there is a reasonable need for that document to be produced in color images.

6. Each page of a document produced as an image shall have a legible, unique, sequentially increasing production page identification number ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document, preferably located at the bottom right hand corner of the document. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of the CAPO or ADR CAPO entered in this case, or has been redacted in accordance with applicable law or court order. In the case of confidential materials or materials redacted in accordance with applicable law or court order, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. The Bates Number sequence shall be entirely alphanumeric, with no spaces or symbols (other than hyphens).

7. Each such document page image file shall be named with the unique Bates Number of the single-page TIFF image, followed by the extension ".tif."

8. Unless otherwise agreed in writing by the parties, the parties shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "POL001" or "US001," "POL002" or "US002"), as well as the volume number of the material in that production wave (e.g., "-001," "-002"). For example, if the first production wave by a party comprises document images on three hard drives, a party shall label each hard drive in the following manner: "POL001-001" or "US001-001," "POL001-002" or "US001-002," "POL001-003" or "US001-003." Additional information that shall be identified on the physical Production Media, or in a transmittal letter accompanying the Production Media, shall include: (1) text referencing that it was produced in No. 02-24L, (2) the producing party's name, (3) the type of materials on the media (e.g., "Documents," "OCR Text," "Objective Coding," etc.), (4) the production date, (5) the Bates Number range of the materials contained on the Production Media, and (6) as appropriate, the set of discovery requests to which the materials are responsive (e.g., "Def.'s Resp. to Pl.'s Second Set of RFPs"). In addition, the document custodian or repository location for each Bates Number range of materials shall be identified in a cover letter enclosing the Production Media and in a database field in the Concordance-compatible "load file."

9. In responding to a discovery request propounded under the RCFC in this lawsuit, neither party is required to search for responsive materials from the following categories of ESI, absent a showing of good cause:

   a. Data in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

   b. Voicemail messages, instant messages (such as messages sent on AOL Instant Messenger or Microsoft Communicator), and text messages (such as cell-phone to cell-phone SMS messages, or other similar services including, but not limited to, Blackberry "PIN" messages);

   c. Electronic mail and other forms of electronic communication other than facsimiles; and

   d. Data stored on a Personal Digital Assistant or smartphone (e.g., Blackberry handheld), including electronic mail sent to or from such devices, as well as calendar or contact data, provided that a copy of such data is routinely duplicated elsewhere in a manner that would be subject to searching.

10. Absent a showing of good cause (resulting in a modification of this order), neither party is required to preserve or search for responsive materials from the following categories of ESI:

    a. Logs of calls made from cellular phones;

    b. Deleted computer files, whether fragmented or whole;

    c. Temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

    d. Server, system, or network logs;

    e. Electronic data that is temporarily stored but not preserved by scientific equipment or attached devices in their ordinary course of operation, other than the data that is ordinarily preserved as part of any reports or analyses created by such equipment;

    f. Messages that are posted on social media sites (including, but not limited to, Facebook) or micro-blogging sites (including, but not limited to, Twitter); and

    g. Data stored on printers, copy machines, or fax machines.

11. The parties shall meet and confer regarding the format of production for databases and other dynamically-stored ESI. For such ESI that is produced and subsequently updated with discoverable data, the parties shall agree on a reasonable production schedule for such updates. Document indices stored in databases, such as the Department of the Interior's Box Inventory Search System ("BISS"), generally will be considered databases and shall be produced in a format that reasonably will allow the receiving party to search all objective, non-protected coded information using an appropriate, non-proprietary database program. The parties shall meet and confer regarding production of indices.

12. The parties shall meet and confer to determine whether and how certain files, including video files, audio files, and other files with animated or otherwise unprintable content, shall be produced in native format or another electronic format.

13. General ESI production requests shall not include metadata absent a showing of good cause. However, the parties shall retain and preserve the original native electronic source documents in a manner so as to preserve the metadata associated with these electronic materials in the event review of such metadata is warranted. The parties may agree in writing to limit the scope of metadata that must be preserved. If a party is undertaking hardware or software upgrades or changes that will alter or destroy metadata, it shall retain a separate electronic copy of the original native electronic source documents on

suitable media to preserve the original metadata and the original file structure. If a party believes that the obligation in the preceding sentence imposes an undue burden, the parties shall meet and confer and if necessary submit the matter to the court. As new documents are created by a party or its agents, such documents may have metadata removed in accordance with applicable policies or best practices.

14. By preserving information for the purpose of any litigation on plaintiff's claims, the parties are not conceding that such material is discoverable in any litigation between the parties in this or any other lawsuit, nor are they waiving any claim of privilege.

15. Production of materials in compliance with this order also shall be deemed compliant with the requirements of RCFC 34(b)(2)(E).

## PRIVILEGES AND FED. R. EVID. 502

16. The provisions of this order shall apply to all information produced in this litigation.

17. Pursuant to Fed. R. Evid. 502, the production of documents and data pursuant to this order shall not result in the waiver of the attorney-client privilege or work-production protection as to those documents and data in either this case or any other federal or state proceeding.

18. If the producing party determines that it has produced a document or data to which it wishes to assert a claim of privilege or protection, the counsel for the producing party shall notify the recipient promptly of its claim and the basis therefor. As part of the notification, the producing party's counsel shall identify, by Bates Number(s), the document(s) as to which the producing party is asserting a claim of privilege or protection.

19. Upon receiving notice of a claim of privilege or protection by the producing party regarding a produced document or data, the recipient shall segregate, with promptness and in accordance with RCFC 26(b)(5)(B), the specified document or data, as well as any copies thereof, and the recipient shall not use the information in the specified document or data, except as provided by RCFC 26(b)(5)(B), until after the claim is resolved. If the court upholds—or if the recipient does not challenge within 30 days—the producing party's claim or privilege as to the produced document or data, the recipient shall return or dispose of the specified document or data, as well as any copies thereof.

20. Upon identification of any document or data which appears to be potentially privileged or protected, the recipient shall notify the producing party's counsel and treat the document or data as confidential under the CAPO, provided that the recipient shall give notice and adhere to the other requirements of this paragraph before filing such a document with the court. Such notification shall not waive the recipient's ability to challenge any assertion of privilege or protection made by the producing party as to the identified document. As

part of the notification, the recipient shall identify, by Bates Number, the document or data at issue.  The recipient shall segregate the specified document or data, as well as any copies thereof, from the other materials, and the recipient shall not use the information in the potentially privileged or protected document or data, except as provided by RCFC 26(b)(5)(B), for a period of 30 days after the date on which the recipient notifies the producing party's counsel.  Within the 30-day period, or any other period of time agreed to by the parties, the producing party shall determine whether it will assert a claim of privilege or protection as to the identified document, and its counsel shall notify the recipient of its determination.

21. This order may be modified by the court for good cause. The court will be inclined to grant any modification jointly proposed by the parties.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge